Good morning. John Gard for Mr. Andres Guerrero-Acosta. Let's give your opponent a chance to get in his seat. Okay. Petitioner concedes at the onset that he is not a class member of Barona Gomez Settlement and withdraws arguments made at page 47 and 48 of petitioner's opening brief that might indicate as such, except that which notes that the petitioner is in the RAM decision, which is governed at 243 Federal 3rd 510 issued by this court, would qualify for a class membership of the Barona Gomez Class Settlement. And given this incredible contradiction, and the settlement is also defined at 243 Federal 2nd 1034, given this contradiction, we are left to request, respectfully request, that this court revisit RAM and either distinguish this case from RAM or reconsider the outcome in RAM. As a preliminary matter, this case comes before this tribunal in that the petitioner was seeking suspension, which in part requires prior to the prior to amendments implemented at section 203 of the Nicaraguan Central American Relief Act, NICARA, a showing of seven years' physical presence prior to applying for relief. Now, we are asserting that petitioner could have been granted relief if allowed to proceed for his individual hearing, which was initially calendared for November 5, 1997, prior to this court's decision in RAM. However, his hearing was continued and heard after amendments at section 203 of NICARA of section 309C5, which implemented the stop time rule cutting off the accumulation of the required seven years at issuance of an order to show cause. Are you asking us to distinguish RAM or ignore it? We are asking you either to distinguish RAM or reconsider it. Not ignore it. Reconsider it. RAM was made without any of the considerations brought to this court by Barona Gomez. You only see three judges up here, don't you? I do. Well, we're powerless to reconsider. Then we're left to distinguish. Yes. Thank you. In any event of No. Exactly how do you distinguish it? Well, RAM did not. RAM employed the whole Act rule and looked at 309C5, but failed to look at 309C7 of the Act, which imposed a 4,000 cap, as it led to, erroneously, the EOIR directives, which prevented grants of relief, deferred them, shall we say, but only permitted denials of relief by the immigration judges and the board. In doing this, this was clearly in violation of 309C7, because the quota in question was to be tallied only after April 1, not prior to April 1, but these directives were issued on February 14th out of fear of 3,900 grants to that date, prior even to the tallying of the quota, which is 4,000. Well, you're actually telling us RAM's wrong rather than telling us how this case is different. This individual is not a class member and had the hearing well after that time, and I don't think there's anything wrong with the stop clock analysis for one in his situation. Where I'm leading this court ultimately is to either remand to district court through the transfer statute for a hearing or in the alternative, remand to the board to re-paper, according to Alcaraz v. INS, which fashions such a remedy. However, to get there, I have to, I have to, and I appreciate that the court's hands are tied. To get there, I have to discuss some of the problems of RAM in light of all the issues brought out in Barolina Gomez. It's an awkward position, but I have to go there. Now, to re-paper, what would you have to do? And I don't think we can order re-papering, can we? Well, this court has remanded back to the board in order to re-paper, in order to exercise, make a form, in order to remand, in fact, back to the Department of Homeland Security after being remanded to an immigration judge for the purposes of exercising discretion in re-papering. The Alcaraz decision came out just before Petitioner's reply brief. The Alcaraz decision also noted to this court that requests to re-paper are essentially futile. They don't get replied to. They don't get responded to. I've had several cases that could have been re-papered. Only a few have been admittedly re-papered by the board sui sponte, and it depends on who was sitting on the board at that time. The persons who suggested re-papering in those cases are no longer on the board. So where the exercise of discretion is futile, this court's propensity to want Petitioner to exercise administrative remedies would not apply as a prudential matter. And so this court can remand back to the government to consider re-papering. Can I proceed with my initial analysis? Sure. Thank you. What these directives did is it created a 3,000 backlog unnecessarily. And the problem there was that this backlog was followed the next fiscal year. And remember, there was no ñ when 3,900 suspension grants were tallied, they were tallied erroneously. They should have been tallied after April 1 rather than before April 1, 1997. But when these 3,000 case backlog was dealt with, this 3,000 case backlog was dealt with through the promulgation of regulations on October 3, 1997, with mandates that the backlog be reduced, leading my client's case, who prior to RAM could have been granted suspension, to be re-calendared. And for that reason, it would make sense to remand the district court for a factual finding as to whether or not the judge re-calendared in response to the mandate ñ the immigration judge re-calendared in response to the mandate of federal regulations to clear out the national backlog of 3,000 cases. What ñ rather than going through all the manners in which these directors violated both the statute, not only at 309C7, but at 309B, requiring the issuance of proper regulations, the Administrative Procedures Act, and were issued without any regulations authorizing the board or the immigration judge to issue these directives, I'll conclude my second part of the argument by noting that these directors were part of basically a greater plan, sad to say, because Barona-Gomez notes at page 1237, 1238 of the first Barona-Gomez decision, that the Attorney General was busily lobbying to ñ lobbying for the implementation of a cutoff date by issuance of an order to show cause. So on one hand, rather than promulgating regulations, she directs her delegates to issue directives to ñ in violation of law to prevent grants, while lobbying Congress effectively to ensure that these cases that she questions are never to be granted, notwithstanding that the law that existed prior to RAM could have led to them being granted. And we would like to insist that this Court ñ respectfully insist that this Court note that this is a violation of due process. The Attorney General can't be a chief judge, on one hand, and a chief prosecutor, working feverishly to limit any interpretation of law. On the other hand, this Court, as well as Supreme Court, has noted that immigration judges and that function within the Act can't at the same time prosecute and adjudicate. And with that, we'd like to reserve opportunity to rebut the government. Thank you. You have about 15 seconds to do that. Counsel for the government. Good morning, Your Honor. May it please the Court, my name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. I have only two things that I want to observe at the outset, and I really appreciate the Court giving me some guidance if there's any questions the Court has because I'm not sure where we're headed here. The two things that I believe are completely dispositive of this, regardless of all of counsel's arguments, are, first, that there is no liberty interest in the underlying discretionary relief, and therefore, there cannot be a due process issue in this sort of case. And the Court can't be more explicit about that in the Munoz case, which, although it was a cancellation case, discussed suspensions specifically in support of that holding. There simply is no due process. There's no liberty interest to support due process in the case. So we might enter into a discussion about that at some point, but I don't think this case turns on that. It is. If there is no due process right here, there is no case because that's Petitioner's only argument. What I'm saying is I don't think that's a basis upon which we need to decide the case. The second thing I want to observe is that, regardless of anything else, Petitioner's not eligible and never has been eligible for suspension of removal or even cancellation of removal. If you look at the immigration judge's decision and then even look at the Board's decision, the immigration judge decided that he wasn't eligible for removal on a variety of bases, specifically one of which was he hadn't proven that he entered the United States without inspection in November of 1990, and he filed his application for suspension in March of 1990. It's just not in March of 1997. There simply wasn't seven years there, period. And the immigration judge held that regardless of any other issue, and Petitioner has never contested that at any time. And then there's the Goodmore character finding and the extortion hardship finding, and then you get to the finding that's based on the stop time rule. All of those reasons are there, and so regardless of anything else, Petitioner was never eligible and has never been eligible and is not currently eligible for suspension of removal or cancellation. If you want to deal with it in due process terms, there's no prejudice. If you want to deal with it in terms of whether there's some kind of error involved here, there simply is not. So that is 100 percent dispositive of the case one way or another. It also is dispositive of the repapering issue that's raised in Petitioner's reply brief for the first time. With that, I have some other things I could talk about, but I really want to ask the Court if there's anything that I need to talk about. I don't see any questions. Thank you for your argument. Thank you. Rebuttal. Briefly, the Board's last detailed decision is what this Court must review, and the Board's decision denied the Petitioner's appeal premised upon 309C5 exclusively without dealing with other issues. And finally, this Court has noted again and again that access to relief wrongly denied, even when eliminated, requires that that relief be made available to the Italian seeking the relief as a question of due process. Thank you. Thank you both for your arguments. The case just argued will be submitted for decision, and we'll proceed to the third case on the calendar for our discussion.
judges: Lay , B. Fletcher, Hawkins